IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

LUCINDA L. STEPP           )
                           )
v.                         )    No. 2:03-0037
                           )
JO ANNE B. BARNHART,        )
Commissioner of Social Security )

To: The Honorable John T. Nixon, Senior District Judge

REPORT AND RECOMMENDATION

The plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Title II disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act").

The plaintiff filed applications for DIB and SSI on January 25, 2000. (Tr. 104-07, 541-45). Her applications were denied initially on April 13, 2000 (Tr. 81-85, 548-52), and upon reconsideration on August 25, 2000 (Tr. 88-89, 555-56). A hearing was held before an Administrative Law Judge ("ALJ") on January 9, 2002, at which time the plaintiff was represented by counsel. (Tr. 43-76). On April 22, 2002, the ALJ found that the plaintiff was not disabled within the meaning of the Act. (Tr. 17-27). This decision became final when it was approved by the Appeals Council on March 6, 2003. (Tr. 9-10).

Currently pending before the Court is the plaintiff's motion for summary judgment (Docket Entry No. 14), and the defendant's motion for judgment on the administrative record (Docket Entry No. 19).[1]

---

[1]No further filings were made in response to the parties' respective motions.

## I. BACKGROUND

Dr. Jack E. Scariano, Jr. treated the plaintiff from August 31, 1998, through April 21, 2000, for low back pain, leg pain, neck pain, arm pain, arm numbness, and headaches. (Tr. 237-46, 350-58). An MRI of the plaintiff's cervical spine revealed a broad based central herniated disc at the C5/6 level. (Tr. 243).

Dr. Vladimir A. Lytchakov was the plaintiff's treating physician from May 12, 1999, through October 4, 2001. (Tr. 284-331, 380-95). During this time, the plaintiff received treatment for conditions including a sprained right foot, arm numbness, leg numbness, abdominal pain, back pain, bilateral shoulder pain, migraine headaches, chest pain, rectal bleeding, blurred vision, chronic sinusitis, wrist pain, fibromyalgia, bilateral rotator cuff tendonitis, cervical spondylosis, edema, and diffuse arthralgias. See id. [2]

Dr. Joseph A. Jestus treated the plaintiff from August 25, 1999, through December 28, 1999, for complaints of neck pain, left arm pain, back pain, and leg pain. (Tr. 194-201). An MRI of the plaintiff's left shoulder revealed degenerative changes involving the AC joint with encroachment upon the rotator cuff. (Tr. 195). Dr. Jestus found that the plaintiff had a very mild degree of cervical spondylosis at C5/6 and opined that the plaintiff's pain may be something that she must "learn to live with." (Tr. 194).

The plaintiff underwent a consultative examination by Dr. Donita Keown on March 15, 2000. (Tr. 206-09). Dr. Keown opined that the plaintiff could sit, stand or walk at least six hours in an eight-hour day, routinely lift 15 pounds, and episodically lift 25 pounds (Tr. 209). She also

---

[2]Many of Dr. Lytchakov's records are illegible.

2

noted that the plaintiff had a full range of motion over her shoulder, elbows, wrists and hands. (Tr. 208).

Dr. Mark A. Loftis, a DDS examiner, consultatively evaluated the plaintiff on March 20, 2000, noting that the plaintiff's primary allegations were arthritis and pain in her left side. (Tr. 219-223). WAIS-III testing yielded a Verbal IQ of 67, a Performance IQ of 69, and a Full Scale IQ of 65 (Tr. 220-21), placing her in the extremely low classification of cognitive functioning. Other tests revealed that the plaintiff had obtained a seventh grade reading level and a fourth grade arithmetic level. (Tr. 221). Dr. Loftis opined that the plaintiff appeared depressed and presented symptoms consistent with a depressive disorder. (Id.) He diagnosed the plaintiff with depressive disorder not otherwise specified, as well as borderline intellectual functioning, as well as a global assessment of functioning (GAF) score of 75.[3] (Tr. 222).

Dr. Stephen S. Chung evaluated the plaintiff on November 10, 2000, due to complaints of whole body pain and numbness, as well as headaches. (Tr. 279-81). Dr. Chung reported that the plaintiff had chronic pain, and severe tenderness in her neck, thorax, and lumbar regions. (Tr. 279). He opined that the plaintiff's symptoms fit into the category of fibromyalgia, but that a significant amount of her problems probably arose from her depression and social situation with increased stressors. (Tr. 281).

The plaintiff received treatment at Plateau/Cumberland Mountain Mental Health Center from July 25, 2000, through January 9, 2002, due to stress, depression, crying spells, feelings of

---

[3]With a GAF of 71 to 80, if symptoms are present, they are transient and with expectable reactions to psycho-social stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork). Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR), 34 (4th ed. 2000).

3

hopelessness, somatic complaints, insomnia, severe nightmares, paranoia, anxiety, visual hallucinations, auditory hallucinations, residual effects of childhood sexual abuse, and disturbed family relationships. (Tr. 332-49, 360-79, 416-22, 516-33). On October 25, 2000, she was diagnosed with a GAF score of 52,[4] with a highest GAF score of 58 within the past year, and a lowest GAF score of 48 within the past year.[5] (Tr. 337). On May 28, 2001, she was diagnosed with a GAF score of 50 (Tr. 536), and on October 18, 2001, she was diagnosed with a GAF score of 52, with a highest GAF score of 58 within the past year (Tr. 520). On numerous occasions, the plaintiff was diagnosed with major depressive disorder, recurrent, moderate with psychosis. (Tr. 332, 337, 340, 347, 416, 422). In physician statements dated January 31, 2001, April 2, 2001, and August 16, 2001, respectively, it was reported that the plaintiff was not capable of maintaining employment. (Tr. 332, 416, 422).

The plaintiff was admitted to Peninsula Hospital from May 24, 2001, through May 28, 2001, due to depression and suicidal ideation. (Tr. 535-40). The plaintiff*s diagnoses upon discharge were severe, recurrent major depression, hypertension, arthritis, and psychosocial problems. (Tr. 536).

Dr. Abhay G. Kemkar treated the plaintiff from July 26, 2001, through May 8, 2002, for various conditions, including chest pain, leg cramps, myalgia, migraine headaches, shoulder pain, swelling, and abdominal pain. (Tr. 424-35). The plaintiff received treatment at Cumberland Medical

---

[4]A GAF of 51 to 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR), 34 (4th ed. 2000).

[5]A GAF of 41 to 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR), 34 (4th ed. 2000).

4

Center on June 11, 2002, and again on July 18, 2002, due to neck pain and shoulder pain. (Tr. 563-66).

At the hearing, the plaintiff testified that she is able to read and write, but that she had trouble adding and subtracting. (Tr. 47). She testified that she previously worked as a deli clerk, nurse tech, bakery assistant, general laborer, mechanic and machine operator. (See Tr. 49-57). One of her last jobs was at a loom factory, where she ran 80 sewing machines. (Tr. 57-56).

When asked what conditions prevented her from doing her prior jobs, the plaintiff responded (Tr. 58):

> Lifting, raising up over my head. I can walk down the street, my feet start swelling. And they're swollen right now just from going across Cookeville. I'm stiff as a board right now. I'm hurting right now. My old left side hurts right now. I can't hardly move my head right now, I have to turn like that because just driving in the car, if I don't — I don't do nothing anymore like I used to. I mean, I used to [be] energetic. I weighed about 100 pounds. This is swelling. This ain't what — this ain't weight. I've been going to the doctor's for the last three years because of it. And I just — and the more I work, the worst I get . . . .

The plaintiff then testified that a case manager from the Plateau Mental Health Center visits her home three times a month. (Tr. 67). While at the plaintiff's house, the case manager helps her with "[a]nxiety, depression, being scared, nightmares, not sleeping, [her] nerves, [and] being around people." (Tr. 68).

Based on the record, the ALJ made the following determinations:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

5

Case 2:03-cv-00037 Document 21 Filed 07/13/05 Page 5 of 12 PageID #: 5

3. The claimant has a combination of impairments considered "severe" based on the requirements in the Regulations, namely cervical spondylosis at C5-6 and bilateral rotator cuff tendonitis, and depressive disorder.

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments.

7. The claimant has the following residual functional capacity: occasionally lift and carry 50 pounds and frequently lift and carry 20 pounds. She has no limitations with standing, walking and sitting. She is limited in her upper extremities with shoulder abduction due to rotator cuff tendonitis.

8. The claimant's past relevant work as nurse technician, motel maid, handpacker, and deli clerk did not require the performance of work-related activities precluded by her residual functional capacity.

9. The claimant's medically determinable bone spurs, arthritis, and nerves do not prevent the claimant from performing her past relevant work.

10. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

## II. DISCUSSION

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether or not the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her conclusion. 42 U.S.C. §§ 405(g) and 1382(c)(3); <u>Richardson v. Perales</u>, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); <u>Gibson v. Secretary of Health, Education & Welfare</u>, 678 F.2d 653 (6th Cir. 1982). The Commissioner's decision must be affirmed if it is supported by substantial

evidence, even if the Court might have decided the case differently based on substantial evidence to the contrary.  Her v. Commissioner of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999).

A reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).  Substantial evidence means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion.  It is more than a mere scintilla of evidence. Richardson, supra;  Le Master v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Court must accept the ALJ's explicit findings and determination unless the record, as a whole, is without substantial evidence to support the ALJ's determination.  Houston v. Secretary of Health & Human Servs., 736 F.2d 365, 366 (6th Cir. 1984);  Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).

The Commissioner must employ a five-step evaluation process in determining the issue of disability.  The five steps are as follows: (1) If claimant is doing substantial gainful activity, she is not disabled; (2) If claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled; (3) If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry; (4) If claimant's impairment does not prevent her from doing her past relevant work, she is not disabled; (5) Even if claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity ("RFC") and vocational factors, such as age,

7

education, and past work experience, she is not disabled.[6]  See 20 C.F.R. § 404.1520.  See also Tyra v. Secretary of Health & Human Servs., 896 F.2d 1024, 1028-29 (6th Cir. 1990); Farris v. Secretary of Health & Human Servs., 773 F.2d 85, 88-89 (6th Cir. 1985); Mowery v. Heckler, 771 F.2d 966, 969-70 (6th Cir. 1985);  Houston, supra.

The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques.  Id. See 42 U.S.C. § 1382c(a)(3)(C); 20 C.F.R. §§ 404.1512 (a), (c), 404.1513(d); Landsaw v. Secretary of Health & Human Servs., 803 F.2d 211, 214 (6th Cir. 1986); Tyra, 896 F.2d at 1028-29.  However, the Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment.  42 U.S.C. § 432(d)(2)(C); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

Once the plaintiff establishes a *prima facie* case that she is unable to perform her prior relevant employment, the burden shifts to the Commissioner to show that the plaintiff can perform other substantial gainful employment, and that such employment exists in the national economy. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980); Hephner, supra.  To rebut a *prima facie* case, the Commissioner must come forward with particularized proof of the plaintiff's individual vocational qualifications to perform specific jobs.  O'Banner v. Secretary of Health, Education & Welfare, 587 F.2d 321 (6th Cir. 1978).

A.  The plaintiff's impairment does not meet Listing 12.05C

---

[6]This latter factor is considered regardless of whether such work exists in the immediate area in which plaintiff lives or whether a specific job vacancy exists or whether the plaintiff would be hired if he applied.  Ragan v. Finch, 435 F.2d 239, 241 (6th Cir. 1970).

8

Case 2:03-cv-00037   Document 21   Filed 07/13/05   Page 8 of 12 PageID #: 8

The plaintiff argues that she is presumptively disabled because she demonstrated, at step three, that her severe impairment "meets or equals a listed impairment." 20 C.F.R. § 404.1520(d). Specifically, she contends that her impairment meets or equals Listing 12.05(C), which provides, in pertinent part, as follows:

> Mental Retardation and Autism: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22) . . . the required level of
> severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitations of function.

The regulations explain that, in order to meet the requirement of 12.05(C), "specific symptoms, signs, and laboratory findings in the paragraph A criteria of any of the listings in this section cannot be considered in isolation from the description of the mental disorder contained at the beginning of each listing category." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A). Thus, based on this characterization, a plaintiff must: (1) suffer from "significantly subaverage general intellectual functioning," (2) suffer from "deficits in adaptive functioning," (3) initially manifest such deficits during the developmental period (before age 22), and (4) meet one of the four criteria (A, B, C, or D). See Foster v. Halter, 279 F.3d 348, 354-55 (6th Cir. 2001).

In Foster, the Court of Appeals for the Sixth Circuit applied the criteria of Listing 12.05(C) to a plaintiff who had a full scale IQ of 68, completed the ninth grade in special education classes, tried four times without success to earn her GED, and was diagnosed with an adjustment disorder with depressed mood. The Court found that substantial evidence supported the ALJ's conclusion that the plaintiff did not meet the listing for mental retardation. Specifically, the Court noted that

9

the plaintiff did not demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning" before age 22.

Here, the plaintiff relies mainly on a psychological report issued by Dr. Mark Loftis, who assigned the plaintiff with a full scale IQ of 65. (Tr. 221). However, a thorough review of the report gives a number of reasons to seriously question whether the plaintiff is mentally retarded. First, the plaintiff was 42 years old at the time of the test, and did not show any deficits before the age of 22. Unlike the plaintiff in Foster, the record does not show that the plaintiff attended any special education classes or quit any job due to a mental defect. Second, the plaintiff was able to read at the seventh grade level and perform arithmetic at the fourth grade level. (Tr. 23, 221). The reason she was never able to attain her GED was not due to any mental defect, but because she "was always having problems with her husband or difficulty with her kids." (Tr. 219). Third, Dr. Loftis himself opined that the plaintiff's adaptive functioning "seems to be too high for her to have mental retardation," and found that she was cognitively able to perform most entry level, simple labor-type jobs. (Tr. 221-22, 23).

Furthermore, on April 5, 2000, James S. Walker, Ph.D., examined the plaintiff's medical record and found her IQ scores to be clearly invalid. (Tr. 228-29). Similarly, on August 22, 2000, Victor Pestrak, Ph.D., also found that the plaintiff does not have a mental impairment that meets or equals a listed impairment. (Tr. 270-77).

Taking these factors into consideration, substantial evidence supports the ALJ's determination that the plaintiff neither meets nor equals the criteria of Listing 12.05(C). Not only did the plaintiff fail to show that her general intellectual functioning was "significantly sub-average"

10

prior to age 22, but her academic, vocational and medical backgrounds do not reflect that she suffers from mental retardation as defined in the Listing.

B. The ALJ's decision was supported by substantial evidence

The plaintiff also argues that the ALJ's decision was not supported by substantial evidence. However, from August 31, 1999, the date of the plaintiff's alleged disability, to April 22, 2002, the date of the ALJ's decision, substantial evidence supports the ALJ's decision.

Specifically, the plaintiff is able to read and write, although she does have some trouble adding and subtracting. (Tr. 25, 220-21). She can do light housework, such as washing dishes and doing laundry. (Tr. 25, 149-50, 220). Her significant and varied past relevant work is consistent with an ability to work, as she has worked in a hotel, factories, fast food restaurants, and also as a machine operator and laborer. (Tr. 25, 49-58, 135-39, 186).

In addition, as previously noted, Dr. Loftis determined that the plaintiff "appears to be capable cognitively of most entry-level or labor-type tasks." (Tr. 222). Although the plaintiff has problems with overhead lifting due to bilateral shoulder problems, the ALJ recognized that her treating physician, Dr. Lytchakov, assessed that she could perform a range of medium exertional work with limitations on pushing and pulling. (Tr. 25, 381-84). Further, the ALJ noted that Dr. Lytchakov's assessment is consistent with the findings of Drs. Keown and Chung. (Tr. 25). Thus, there was substantial evidence to support the ALJ's determination that the plaintiff could perform her past relevant work.

III. RECOMMENDATION

11

For the above stated reasons it is recommended that the plaintiff's motion (Docket Entry No. 14) be DENIED, that the defendant's motion for judgment on the administrative record (Docket Entry No. 19) be GRANTED, and that the Commissioner's decision be AFFIRMED.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice, and must state with particularity the specific portions of this Report and Recommendation to which the objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's order. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

JULIET GRIFFIN
United States Magistrate Judge