# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| LUCINDA L. STEPP, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Civil No. 2:03-0037<br>Judge Nixon<br>Magistrate Judge Griffin |

## **MEMORANDUM ORDER**

Pending before the Court is Plaintiff's Motion for Summary Judgment (Doc. No. 14) and Defendant's Motion for Judgment Based Upon the Administrative Record (Doc. No. 19). Magistrate Judge Griffin has issued a Report and Recommendation ("Report") (Doc. No. 21), to which Plaintiff has filed objections (Doc. No. 23). Upon review of the Magistrate Judge's Report and for the reasons stated below, the Court ADOPTS the Magistrate Judge's Report in its entirety, GRANTS Defendant's Motion for Judgment Based Upon the Administrative Record, and DENIES Plaintiff's Motion for Summary Judgment.

## I.     BACKGROUND

### A.     Procedural Background

Lucinda Stepp ("Stepp" or "Plaintiff") filed an Application for Supplemental Security Income Benefits on February 2, 2000 (AR 541-45), and an Application for Disability Insurance Benefits under Title II of the Social Security Act ("Act") on February 11, 2000 (AR 104-07). Her applications were denied initially on April 13, 2000 (AR 77-78, 81-85, 546-52) and upon reconsideration on August 25, 2000 (AR 79-80, 88-89, 553-56). Stepp timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). (AR 90-91.) The hearing was held on

January 9, 2002, at which time Plaintiff was represented by counsel. (AR 42-76.) On April 22, 2002, the ALJ found that Stepp was not disabled within the meaning of the Act. (AR 17-27.) On March 6, 2003, the Social Security Administration's Appeals Council denied Stepp's request for review of the ALJ's decision, rendering the ALJ's determination the final decision of the Commission of Social Security ("Commissioner" or "Defendant"). (AR 9-10.)

Plaintiff timely filed this action to obtain judicial review of the Commissioner's final decision. (Doc. No. 1.) The Court has jurisdiction under 42 U.S.C. § 405(g). The Court referred this matter to the Magistrate Judge. On July 13, 2005, the Magistrate Judge recommended that Plaintiff's motion be denied. (Doc. No. 21 at 10-11.) Plaintiff asserts two objections to the Magistrate Judge's findings. (Doc. No. 23 at 1.) Specifically, Plaintiff asserts that the ALJ erred in the evaluation of Plaintiff's mental impairments by finding that Plaintiff fails to meet or equal the criteria of Listing of Impairments ("Listing") 12.05C. (Id.) In addition, Plaintiff alleges that the ALJ erred in determining that Plaintiff retains the Residual Functional Capacity ("RFC") to perform medium exertional work. (Id.)

**B.     Factual Background**

Dr. Jack E. Scariano, Jr. treated Stepp from August 31, 1998 through April 21, 2000 for persistent pain and numbness, specifically in the lower back, neck, and left arm and leg. (AR 237-46, 350-58.) An MRI of Plaintiff's cervical spine revealed a broad based central herniated disc at the C5/6 level. (AR 243.)

Dr. Vladimir A. Lytchakov was Plaintiff*s treating physician from May 12, 1999 to June 13, 2001. (AR 284-331, 380-95.) During this time Plaintiff received treatments for

2

various physical ailments, including back and shoulder pain.[1] (See AR 284-331, 380-95.) On October 4, 2001, Dr. Lytchakov completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). (AR 380-84.) Dr. Lytchakov opined that Plaintiff retained the ability to occasionally lift and carry fifty pounds and frequently lift and carry twenty pounds. (AR 381.) The treating physician also indicated that Plaintiff was limited in her upper extremities, but her ability to walk, stand, and sit was not affected by her impairments. (AR 381-83.) In addition, he opined that Plaintiff had no postural limitations and could frequently (i.e., one-third to two-thirds of an eight-hour workday) climb, balance, kneel, crouch, crawl and stoop. (AR 382.) Dr. Lytchakov also noted that Plaintiff had unlimited manipulative functions, including reaching in all directions and overhead. (AR 383.)

Dr. Joseph A. Jestus treated Plaintiff from August 25, 1999 through December 28, 1999 for various physical ailments. (AR 194-201.) An MRI of Stepp's left shoulder revealed a bony bar at C5/6 and a very mild encroachment upon the C6 nerve roots. (AR 195.) Dr. Jestus found that Plaintiff had a very mild degree of cervical spondylosis at C5/6 and opined that Plaintiff's pain may be something that she will have to "learn to live with." (AR 194.)

Dr. Jestus referred Plaintiff to Dr. John R. Thompson, who treated Plaintiff from October 6, 1999 through February 3, 2000 for shoulder pain. Dr. Thompson diagnosed her with left AC arthiritis and cervical spinal stenosis at C-5/6. Physical therapy was recommended. (AR 204-05.)

On March 15, 2000, Dr. Donita Keown performed a consultative examination. (AR 206-10.) Dr. Keown opined that Plaintiff could sit, stand or walk at least six hours in an eight-hour day, routinely lift fifteen pounds, and episodically lift twenty-five pounds. (AR 209.) Dr.

---

[1] Many of Dr. Lytchakov's records are illegible.

Keown further stated that "full range of motion is noted over [Plaintiff's] shoulders, elbows, wrists and hands." (AR 208.) Although noting that "[d]iscomfort is voiced with manipulation of the left shoulder and the left hip," Dr. Keown concluded that Plaintiff showed a "full range of motion over the joints of the upper and lower extremities, . . . motor strength [was] intact in both hands, arms and legs . . . [and Plaintiff had] a very minor reduction in range of motion in the cervical spine secondary to pain during the exam." (AR 208.)

On March 22, 2000 and April 23, 2000, Residual Functional Capacity Assessments - Physical were completed by non-examining, disability determination services ("DDS") physicians. (AR 211-18, 247-54.) The DDS physicians also indicated that Plaintiff was able to occasionally carry or lift twenty pounds and frequently carry or lift ten pounds. (AR 212, 248.) Plaintiff was unlimited in her upper extremities "other than as shown for lift and/or carry." (AR 212, 248.) In contrast to Dr. Lytchakov, Plaintiffs' treating physician, the DDS physicians found that Plaintiff was limited in reaching overhead due to her shoulder pain. (AR 214, 250.) Finally, the physicians indicated that their findings did not significantly differ from the treating physician's assessment. (AR 217, 254.)

Dr. Mark A. Loftis, a DDS examiner, consultatively evaluated the plaintiff on March 20, 2000. (AR 219-23). WAIS-III testing yielded a Verbal IQ of 67, a Performance IQ of 69, and a Full Scale IQ of 65, placing her in the extremely low classification of cognitive functioning. (AR 220-21.) Other tests revealed that Plaintiff had a seventh grade reading level and a fourth grade arithmetic level. (AR 221.) Dr. Loftis opined that "her adaptive functioning seems to be too high for her to have mental retardation, but the possibility of an underlying disorder in mathematics does exist, but her relatively low score is probably due to her educational

4

deprivation." (Id.) His diagnostic impressions state that Plaintiff appeared depressed and presented symptoms consistent with a depressive disorder. (Id.) He diagnosed Stepp with depressive disorder not otherwise specified and borderline intellectual functioning. (Id.)

Dr. Stephen S. Chung conducted a neurological evaluation of Plaintiff on November 10, 2000. (AR 279-81.) Dr. Chung reported that Plaintiff had chronic pain, and while the neurological exam was generally unremarkable, it revealed severe tenderness in her neck, thorax, and lumbar regions. (AR 281). He opined that Plaintiff's symptoms fit into the category of fibromyalgia, but that a significant amount of her problems probably arose from her depression and social situation with increased stressors. (Id.) Dr. Chung prescribed medication for pain and insomnia, but appeared to believe that better eating habits, sleep patterns and reduction in social stressors would relieve some of her symptoms. (Id.)

On April 5, 2000, Dr. James S. Walker, a DDS physician, examined Plaintiff's medical record and completed a Psychiatric Review Technique form. (AR 228-36.) On August 22, 2000, Dr. Vicor Pestrak, a DDS physician, also completed a Physical Review Technique form. (AR 270-78.) Dr. Walker and Dr. Pestrak both indicated that Plaintiff had "no evidence of a sign or symptom CLUSTER or SYNDROME which appropriately fits with [12.05 Mental Retardation and Autism] diagnostic category." (AR 232, 274.) While both physicians found that her IQ tests resulting in scores in the 60s were invalid, they concluded that she had low average to borderline IQ. (AR 229-30, 271-72.) They also noted that she had a ninth grade education, no special education and read "mysteries." (AR 229, 271.)

At the hearing, Stepp testified that she is able to read and write, but that she has trouble adding and subtracting. (AR 47.) Plaintiff's testimony was unclear regarding her level

5

of education, but she appears to have completed nine years of education, but only finished seventh grade. (AR 47, 72.) She testified that she previously worked as a deli clerk, nurse technician, bakery assistant, general laborer, mechanic and machine operator. (AR at 49-57.) Plaintiff stated that she was unable to perform her prior jobs because of her various physical ailments and, in particular, pain in the left side of her body. (<u>See</u> AR 58.) Finally, Plaintiff testified that a case manager visits her home three times a month and helps her with "[a]nxiety, depression, being scared, nightmares, not sleeping, [her] nerves, [and] being around people." (AR 67-68.)

Based on the record, the ALJ found that Plaintiff's "medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4." (AR 26.) Specifically, the ALJ determined that Plaintiff has the Residual Functional Capacity ("RFC") to "occasionally lift and carry 50 pounds and frequently lift and carry 20 pounds. She has no limitations with standing, walking, and sitting. She is limited in her upper extremities with shoulder abduction due to rotator cuff tendonitis." (AR 26-27.) The ALJ concluded Plaintiff is able to perform her past relevant work as a deli clerk, handpacker, nurse technician, and motel maid. (AR 27.) Accordingly, the ALJ found that Stepp "was not under a 'disability,' as defined in the Social Security Act . . . ." (AR 27.)

## II. STANDARD OF REVIEW

The Court's review of the portions of the Report to which Plaintiff objects is <u>de novo</u>. 28 U.S.C. § 636(b). The Court's review is limited to "a determination of whether substantial evidence exists in the record to support the Secretary's decision and to a review for any legal errors." <u>Landsaw v. Sec'y of Health & Human Servs.</u>, 803 F.2d 211, 213 (6th Cir. 1986). Title

II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g). Accordingly, an ALJ's decision will be upheld if it is supported by substantial evidence.  Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).  Substantial evidence is "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  Richardson v. Pereles, 402 U.S. 389, 401 (1971).  It is "more than a mere scintilla of evidence, but less than a preponderance."  Bell v. Commissioner, 105 F.3d 244, 245 (6th Cir. 1996) (citing Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

### III.  PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

**A.     Plaintiff Objects To Magistrate Judge's Finding That There Is Substantial Evidence To Support The ALJ's Determination Of No Listing-Level Impairment Under Listing 12.05C (Mental Retardation)**

Plaintiff asserts that the ALJ "erred in the evaluation of the plaintiff's mental impairments [and] in failing to find the plaintiff meets of [sic] equals Listing of Impairments . . . 12.05C."  (Doc. No. 23 at 1.)  Specifically, Plaintiff contends that her Full Scale IQ score of 65 meets the first prong of Listing 12.05C, and such a score at age 42 is an indication of a lifelong condition of mental retardation.  (Id. at 2.)  Plaintiff further alleges that she meets the second prong of Listing 12.05C because she suffers from "severe mental and physical impairments." (Id. at 3.)  Based upon her low IQ and other ailments, Plaintiff contends that she meets or equals the criteria of Listing 12.05C.  (See id. at 2-3.)  The Court disagrees with Plaintiff's objection and concurs with the Magistrate Judge that there is substantial evidence in the record to support the ALJ's finding that Plaintiff does not meet or equal the criteria of Listing 12.05C.  (Doc. No. 21 at 8-10.)

7

> Listing 12.05 states in relevant part:
>
> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. In order for an impairment to meet Listing 12.05, it must satisfy "the diagnostic description in the introductory paragraph and any one of the four sets of criteria." Id. § 12.00(A) (emphasis added); see also Daniels v. Comm'r of Soc. Sec., 70 Fed. Appx. 868, 872 n.1, 2003 WL 21774004, at *4 n.1 (6th Cir. 2003) (requiring claimant to meet requirements of both introductory paragraph and specific Listing). Thus, if the introductory paragraph is not satisfied, the Listing has not been met and it is unnecessary to continue with the analysis under sections A, B, C or D.

The introductory paragraph of Listing 12.05 defines Mental Retardation through three basic criteria: (1) significant subaverage general intellectual functioning accompanied by (2) adaptive functioning which was (3) initially manifested before age twenty-two. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. This language essentially tracks that of the American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, Text Revision 41 (4th ed. 2000) ("DSM-IV-TR"), which states:

> The essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B). The onset must occur before age 18 (Criterion

8

C).[2]

"A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder." Foster v. Halter, 279 F.3d 348, 354 (6th Cir.2001).

In order to demonstrate whether the deficits in intellectual and adaptive functioning occurred prior to age twenty-two, the claimant may introduce testing and/or other evidence that occurred before age twenty-two. As such contemporaneous testing is often absent, it is also permissible to rely on the "common clinical practice of inferring a diagnosis of mental retardation when the longitudinal history and evidence of current functioning demonstrate that the impairment existed before the end of the developmental period." Revised Medical Criteria For Evaluating Mental Disorder And Traumatic Brain Injury, 65 Fed. Reg. 50772 (Aug. 21, 2000.) As a result, this Court must consider whether there is any contemporaneous testing and/or other evidence before examining the non-contemporaneous testing and/or other evidence from which the onset of the impairment before age twenty-two may be inferred.

The Court finds that Plaintiff's circumstances parallel the facts in Foster and, therefore, in accord with the Sixth Circuit's ruling in that case, Plaintiff does not meet or equal the criteria of Listing 12.05C. Foster, 279 F.3d at 354-55. In Foster, the court upheld the ALJ's determination that the plaintiff's impairments failed to meet or equal Listing 12.05C because she did not fulfill the requirements of the introductory paragraph. Id. at 355. In that case, although

---

[2] "We have recognized that Listing 12.05 tracks the Diagnostic and Statistical Manual of Mental Disorders, one of the leading texts in medicine." Burrell v. Comm'r of Soc. Sec., No. 99-4070, 2000 WL 1827799, at *2 (6th Cir. Dec. 8, 2000) (unpublished table disposition) (citing Brown v. Sec'y of Health & Human Servs., 948 F.2d 268, 270 (6th Cir. 1991)).

the plaintiff received Full Scale IQ scores of sixty-nine and sixty-eight at age forty-two, there was no testing or evaluations contemporaneous with the developmental period. Id. at 355. The only contemporaneous evidence consisted of the fact that Foster had completed the ninth grade in special education classes and failed four times to earn the GED. Id. at 352. Later in her life, Foster had worked as an accounting clerk at a bank and a liquor store clerk. Id. at 355. The court concluded that these facts failed to demonstrate a mental disability prior to the age of twenty-two that would meet or equal the criteria set forth in the introductory paragraph of Listing 12.05. Id.

Similar to the plaintiff in Foster, Stepp has failed to present any evidence showing significantly subaverage general intellectual and adaptive functioning prior to the age of twenty-two. The plaintiffs in both cases have similar levels of formal education.[3] (AR 74, 120.) However, unlike in Foster where the plaintiff attended special education classes, Stepp indicated that she did not attend special education classes. (AR 120.) Additionally, Stepp left school because she became pregnant and, while she studied for the GED, she was never able to complete it because of problems at home, not for academic reasons. (AR 219.) As in Foster, this contemporaneous evidence without more does not support Plaintiff's assertion that her general intellectual and adaptive functioning was significantly subaverage prior to age twenty-two.

In addition to the lack of contemporaneous evidence, the non-contemporaneous evidence

---

[3] Plaintiff originally indicated on the Disability Report that she had completed ninth grade, but later testified to stopping her education at the seventh grade level. (AR 74, 120.) For purposes of the Listing 12.05C analysis, the Court will assume Plaintiff only completed seventh grade, which is what the ALJ appears to have done as well. (AR 74-75.)

10

does not demonstrate or support onset of deficits in general intellectual or adaptive functioning prior to age twenty-two.  First, Dr. Loftis, the same physician that tested Plaintiff's IQ, also opined in the psychological report that her adaptive functioning "seems too high for her to have mental retardation," and that she possessed "adequate literacy for most day-to-day situations most adults find themselves in."  (AR 221-22; see also AR 23.)  Second, two DDS examiners indicated that there was no evidence to support that Plaintiff meets or equals the criteria of Listing 12.05C.  (AR 232, 274.)  Further, DDS examiner Dr. Walker opined that an IQ score for Plaintiff in the 60s is "clearly invalid."  (AR 229) (emphasis in original).  Finally, the Vocational Expert testified that Plaintiff had previously been employed in several semi-skilled positions,[4] such as a nurse technician, deli clerk and machine operator.  (AR 71.)  The nurse technician position required a two-week training course, and required tasks such as taking a patient's blood pressure.  (AR 50.)  In her position as a machine operator, Plaintiff worked on different machines (for example, plastic machines, molding machines, injectors) and materials (for example, vacuum cleaners and cassettes).  (AR 51.)  This position required her to use different machines and materials on a daily basis.  (Id.)  Plaintiff's job as a deli clerk required her to do "about

---

[4] Semi-skilled work is defined as:

> work which needs some skills but does not require doing the more complex work duties.  Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.

20 C.F.R. § 404.1568.

11

everything in the store." (AR 53.) The jobs themselves, and the detailed manner in which Plaintiff described them during the hearing, does not demonstrate a deficit in general intellectual or adaptive functioning prior to age twenty-two. Based on this evidence, the Court finds that the ALJ did not err by determining that Plaintiff does not meet or equal the criteria of Listing 12.05C.

Plaintiff further asserts that if the ALJ determined that the consultative examiner was inadequate, then the ALJ should have sought a new exam or Plaintiff's school records. (Doc. No. 23 at 3.) Plaintiff's objection implies that the ALJ found the consultative examiner's testing to be inadequate, but there is no such indication in his decision. To the contrary, after discussing why Plaintiff did not meet the requirements for Listing 12.05C, the ALJ found that the "medical assessment with regard to the claimant's psychological impairments is consistent with the medical evidence." (AR 23.) Moreover, it is the claimant's burden to demonstrate that she meets or equals the criteria of Listing 12.05C. See Foster, 279 F.3d at 356. Plaintiff, through her counsel, could have, but did not, introduce school records. In addition, in contrast to Foster, the Court could find no evidence that Plaintiff requested additional testing or expert testimony on the issue of intellectual and adaptive functioning prior to age twenty-two. (AR 75, 567-68.) Although a hearing before an ALJ is not an adversarial proceeding, it is entirely within the ALJ's discretion whether to request additional testing or expert testimony. When, as in this case, the record contains substantial evidence to make a determination regarding Plaintiff's intellectual and adaptive functioning, the ALJ cannot be said to have abused his discretion. Id. Under these circumstances, the Court finds that the ALJ was not required to make additional inquiries to further develop the record.

12

Case 2:03-cv-00037   Document 24   Filed 02/13/06   Page 12 of 17 PageID #: 32

### B. Plaintiff Objects To Magistrate Judge's Finding That There Is Substantial Evidence To Support The ALJ's Determination That Plaintiff Retains The Residual Functional Capacity To Perform Medium Exertional Work

Plaintiff further asserts that the ALJ erred by finding that she has the RFC to perform medium exertional work. (Doc. No. 23 at 1.) Plaintiff states that she is "unable to meet the demands of work at the medium level of exertion because of her inability to perform overhead work due to bilateral shoulder problems." (Id. at 5.) Light work and medium work are defined in the Social Security Regulations ("S.S.R.") as the following:

> Light work. The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.
>
> Medium work. The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

S.S.R. 83-10, 1983 WL 31251, at *5-6. Upon review of the record, the Court finds that the ALJ did not err in his assessment of Plaintiff's RFC. There is substantial evidence in the record to support the ALJ's determination that Plaintiff retained the RFC to occasionally lift and carry fifty pounds and frequently lift and carry twenty pounds; that she has no limitations with

standing, walking, and sitting; that she is limited in her upper extremities with shoulder abduction due to rotator cuff tendonitis; and that she can perform simple labor and entry level type jobs. (AR 25-27.)

While there is no doubt that Plaintiff suffers from chronic pain, the physicians who evaluated or treated her were consistent in their opinion that the pain was not disabling and Plaintiff retained the ability to perform light to medium work, as defined by S.S.R. 83-10, 1983 WL 31251, at *5-6. Dr. Lytchakov, Plaintiff's own physician, indicated that Plaintiff is unlimited in her manipulative functions, limited in her upper extremities, and retained the ability to occasionally lift and carry fifty pounds and frequently lift or carry twenty pounds. (AR 381-83.) Pursuant to 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) and S.S.R. 96-2p, 1996 WL 374188, at *1, the ALJ gave Dr. Lytchakov's assessment as the treating physician controlling weight. (AR 24.) Dr. Jestus, a specialist that Dr. Lytchakov recommended, opined that Plaintiff had a very mild degree of cervical spondylosis at C5/6 and that Plaintiff's pain was something that she would have to "learn to live with." (AR 194.) Dr. Thompson, another specialist referred by Dr. Jestus, recommended physical therapy to relieve the pain. (AR 204-05.)

In accord with Dr. Lytchacov's view, Dr. Keown opined that Plaintiff could sit, stand or walk at least six hours in an eight-hour day, routinely lift fifteen pounds, and episodically lift twenty-five pounds. (AR 209.) Dr. Keown further stated that "full range of motion is noted over [Plaintiff's] shoulders, elbows, wrists and hands." (AR 208.) Although noting that "[d]iscomfort is voiced with manipulation of the left shoulder and the left hip," Dr. Keown concluded that Plaintiff showed a "full range of motion over the joints of the upper and lower extremities, . . . motor strength [was] intact in both hands, arms and legs . . . [and Plaintiff had] a

very minor reduction in range of motion in the cervical spine secondary to pain during the exam." (AR 208.) Similarly, the DDS physicians indicated that Plaintiff is able to occasionally carry or lift twenty pounds and frequently carry or lift ten pounds, and that she was limited only in her upper extremities. (AR 212, 248.)

Moreover, Dr. Chung's neurological examination of Stepp "was really unremarkable except for trigger points with severe tenderness in the paraspinal muscles in the neck, thorax and lumbar regions." (AR 281.) Dr. Chung also noted her pain, but found that better eating habits, sleep patterns and reduction in social stressors would relieve some symptoms. (AR 281.)

The only evidence that Plaintiff's pain severely restricted her ability to perform light to medium work was Plaintiff's own testimony at the January 2002 hearing in which she complained that pain prevented her from performing her past work and many daily tasks, such as grocery shopping, driving, and household chores. (AR 45-76.) Her hearing testimony, however, was inconsistent with her pre-hearing responses to questionnaires in which she noted the ability to do light housework such as washing dishes, doing laundry, cooking without assistance from others, among other things. (AR 149-51.) In response to this inconsistency, the ALJ stated:

> In light of the foregoing, the claimant's testimony is found to be out of proportion with the clinical and objective findings and otherwise unsupported by her conservative history of treatment, her positive response to medications, her range of daily activities, and the limitations reported by the treating, examining, and reviewing sources. The claimant's daily activities are indicative of a fairly active and varied lifestyle and are not representative of a significant restriction of activities or constriction of interests. I have considered the claimant's subjective allegations and the effect of her complaints on her ability to work. I find that her allegations are not entirely credible to preclude performance of her past relevant work, as well as a wide range of medium, light, and sedentary jobs as described by the vocational expert at the hearing.

(AR 25.)

15

The Sixth Circuit has developed an analytical framework for evaluating subjective complaints of pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Redfield v. Comm'r Soc. Sec., 366 F. Supp.2d 489, 495 (E.D. Mich. 2005) (quoting Duncan v. Sec'y of Health and Human Servs., 801 F.2d 847, 853 (6th Cir. 1986)); see also 20 C.F.R. § 404.1529(a); 20 C.F.R. § 416.929(a); S.S.R. 96-7p, 1996 WL 374186, at *1. Here, the record does reveal objective medical findings that could cause pain, satisfying the first prong of the test. The second prong, however, is not satisfied because Plaintiff's physicians and evaluating physicians did not believe that her medical condition produced the allegedly disabling pain. The only statements regarding disabling pain are Plaintiff's own statements.

An individual's statements as to "pain or other symptoms will not alone establish" disability. 20 C.F.R. § 404.1529(a); 20 C.F.R. § 416.929(a); see also S.S.R. 96-7p, 1996 WL 374186, at *1. Rather, the ALJ must review the record as a whole, "including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." S.S.R. 96-7p, 1996 WL 374186, at *1. "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Id. Moreover, the decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record." Id. at *2. Once an ALJ

16

follows the strictures of S.S.R. 96-7p, his or her credibility findings are accorded great weight and deference, especially as the ALJ is charged with the duty of observing the applicant's demeanor and credibility. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997). In this case, the ALJ provided specific reasons, supported by both the objective medical evidence, as well as Plaintiff's prior statements regarding her daily activities, to discount Plaintiff's hearing testimony. The ALJ's explanation is supported by the evidence, and this Court may not second-guess him.

Based on this evidence, the Court finds that the ALJ's determination that Plaintiff is able to perform "a wide range of medium, light, and sedentary jobs as defined by the vocational expert at the hearing" is substantially supported by the evidence in the record. (AR 25.) Accordingly, the ALJ did not err by determining that Plaintiff has the RFC to perform medium exertional work.

## IV. CONCLUSION

For the reasons stated above, the Court finds the Magistrate Judge's Report is well-founded and supported by the record, and therefore ADOPTS it in its entirety. Accordingly, Plaintiff's Motion for Summary Judgment is DENIED and the Defendant's Motion for Judgement Based Upon the Administrative Record is GRANTED.

It is so ORDERED,

Entered this the 10th day of February, 2006

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT